**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**JERMAINE SPENCER,**

  **Plaintiff,**

  v.

**WES JORDAN,** *et al.***,**

  **Defendants.**

**Case No. 1:22-cv-557**
**JUDGE DOUGLAS R. COLE**

**OPINION AND ORDER**

Plaintiff Jermaine Spencer alleged several prison guards beat him in an unprovoked attack in late 2020 during his incarceration at the Southern Ohio Correctional Facility (SOCF). (Compl., Doc. 1 ¶¶ 12–23, #4–5). Proceeding under 42 U.S.C. § 1983 and also raising various pendent state law claims, Spencer sued those guards in both their individual and official capacities.[1] According to Spencer, while Defendant Wes Jordan was transporting him to the medical facility, Jordan assaulted Spencer without provocation in a hallway where Defendant Thomas Adkins[2] and another correctional officer were present. (*Id.* ¶¶ 17–20, #5). Following that assault, Adkins and the other officer allegedly picked Spencer up and proceeded to assault

---

[1] Spencer had also initially sued the SOCF Warden and Ohio Department of Rehabilitation and Corrections Director in their individual and official capacities under § 1983 for the failure to train and to supervise staff (Count III)—the sole claim raised against only those Defendants. (Doc. 1, #9–10). In response to their motion to dismiss, the Court dismissed the claims against them without prejudice on August 8, 2023. (Op., Doc. 26). So Count III is no longer part of this case.

[2] In the Complaint, Spencer used the moniker "FNU" (i.e., first name unknown) to refer to Adkins. Adkins' appearance before the Court after being served notes that his first name is in fact Thomas. (Doc. 29).

him while returning him to his cell. (*Id.* ¶¶ 21–23, #5). Spencer alleged that he suffered significant injuries to his face, head, hands, and ankles as a result. (*Id.* ¶ 24, #5). As relevant here, Spencer claims Adkins: (1) violated his Eighth Amendment rights by using excessive force when moving Spencer to his cell (Count I); (2) violated that same Amendment by failing to prevent the use of excessive force when he watched Jordan assault Spencer (Count II); (3) was negligent under Ohio law (Count IV); and (4) engaged in a civil conspiracy[3] with Jordan that resulted in Jordan's assault of Spencer (Count V). (*Id.* at #8–9, 10–11).

Adkins now moves to dismiss all claims against him, both in his individual and official capacities, under Federal Rule of Civil Procedure 12(b)(6). (Doc. 28). He argues that state sovereign immunity bars the official capacity claims.[4] (*Id.* at #138–39). As for the individual capacity claims, Adkins argues that they fail for various reasons: (1) state statutory immunity under Ohio Revised Code § 9.86 bars the state-law claims[5] (*id.* at #139–40); (2) if the civil conspiracy count proceeds under § 1983, not

---

[3] No law is cited in this count of the Complaint, which means it is unclear whether Spencer brought this claim under state or federal law. As a result, the Court considers both possibilities and explains that the claim must be dismissed regardless what law applies.

[4] As the Sixth Circuit has explained, "sovereign immunity is a jurisdictional defect that should be addressed under Rule 12(b)(1)." *Geomatrix, LLC v. NSF Int'l*, 82 F.4th 466, 478 (6th Cir. 2023) (emphasis removed). As a result, although Adkins expressly invoked only Federal Rule of Civil Procedure 12(b)(6) in his Motion, the Court construes his Motion to be seeking a dismissal of the official capacity claims under Rule 12(b)(1) for want of subject matter jurisdiction.

[5] The Sixth Circuit has treated the argument that an Ohio-law claim should be dismissed because the state employee is immune from suit under Ohio Revised Code § 9.86 as a challenge to the district court's subject matter jurisdiction. *McCormick v. Miami Univ.*, 693 F.3d 654, 664–65 (6th Cir. 2012) (holding that "[t]he district court [] lacked jurisdiction to hear the state claims" against the defendants in their individual capacities after finding that they were entitled to immunity under Ohio Revised Code § 9.86). As a result, the Court

state law, Spencer failed to allege facts related to all required elements (*id.* at #140–41); (3) Spencer failed to allege that Adkins could intervene to prevent Jordan's alleged excessive use of force (*id.* at #141–43); (4) Spencer's excessive force claim against Adkins for Adkins' own alleged assault fails to state a claim (*id.* at #143–46); and (5) in any event, Adkins is entitled to qualified immunity because his actions were reasonable (*id.* at #146–48). Spencer responded (Doc. 31), and Adkins replied (Doc. 35).

For the reasons discussed below, the Court **DENIES** the Motion as to the excessive force claim directed against Adkins in his individual capacity for his alleged assault of Spencer but **GRANTS** the Motion as to all other claims.

### LEGAL STANDARDS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must present sufficient facts to 'state a claim to relief that is plausible on its face.'" *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319 (6th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing plausibility, the Court "construe[s] the complaint in the light most favorable to the plaintiff." *Bassett*

---

construes Adkins' Motion to be seeking a dismissal of the state-law claims under Rule 12(b)(1) for want of subject matter jurisdiction even though, as noted above, *see supra* note 5, Adkins expressly invoked only Federal Rule of Civil Procedure 12(b)(6) in his Motion to Dismiss.

*v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (cleaned up). But while well-pleaded allegations are accepted as true, they are just that—allegations.

"Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). If the defendant "does not contest the facts in the complaint" when challenging the district court's subject matter jurisdiction, the motion is construed as bringing only a facial attack. *Morgan v. U.S. Dep't of Educ.*, 596 F. Supp. 3d 1023, 1026 (S.D. Ohio 2022). Here, Adkins is mounting solely facial challenges. When evaluating a facial attack to the court's subject matter jurisdiction, the Court accepts all material allegations as true and construes the Complaint in the light most favorable to the plaintiff. *Ritchie*, 15 F.3d at 598. Put another way, "a facial attack on the pleading [for a want of subject matter jurisdiction] … mirrors the standard of review on a motion brought under Rule 12(b)(6)." *Ball by Burba v. Kasich*, 244 F. Supp. 3d 662, 672 (S.D. Ohio 2017).

## ANALYSIS

Adkins' Motion challenges eight claims. Four are official capacity claims: (1) an Eighth Amendment excessive force claim (Count I); (2) an Eighth Amendment failure to protect claim (Count II); (3) an Ohio negligence claim (Count IV); and (4) a civil conspiracy claim that possibly arises under either state or federal law (Count V). The remaining four are the same four claims against Adkins, but this time in his individual capacity.

## A. The Official Capacity Claims

Start with the official capacity claims. Adkins is a state employee. (Doc. 1 ¶ 6, #3). Official capacity suits against state officials are suits against their employer—the state. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). And as states enjoy immunity from suit in federal court, that immunity extends to state officers sued in their official capacities, at least as to claims for money damages, which is all that Spencer seeks here. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–02 (1984). So any claim against Adkins is subject to dismissal because he is immune from suit in that capacity.

Spencer objects that he also sued Adkins in his individual capacity. (Doc. 31, #156). Sure. But that does not negate the fact that the official capacity claims must be dismissed because Adkins is immune from such claims, which are really claims against his employer, the State of Ohio.[6] So Spencer's argument lacks merit and the Court lacks jurisdiction over his official capacity claims.

## B. The Individual Capacity Claims

### 1. The State-Law Claims

Turning to the individual capacity claims, the Court begins with the state-law claims—negligence (Count IV) and, to the extent it can be read as arising under state law, civil conspiracy (Count V). Under Ohio law, state officials are immune from suit under Ohio Revised Code § 9.86, unless the Ohio Court of Claims has determined

---

[6] As Spencer's prayer for relief requests only damages remedies, there is no need to analyze whether *Ex parte Young* would create an exception to Adkins' immunity from claims against him in his official capacity. 208 U.S. 123 (1908).

otherwise pursuant to Ohio Revised Code § 2743.02(F). *McCormick v. Miami Univ.*, 693 F.3d 654, 664–65 (6th Cir. 2012). As "there [i]s no evidence presented that an Ohio Court of Claims has determined that [Adkins] … [is] not entitled to immunity," these state-law claims must be dismissed. *Id.* at 665. Spencer does not challenge this analysis in his opposition. (*See* Doc. 31). So the Court dismisses the state-law claims against Adkins in his individual capacity, once again for lack of jurisdiction.

### 2. The Federal-Law Claims

That leaves three possibly viable federal-law individual capacity claims against Adkins: excessive force (Count I), failure to intervene (Count II), and, to the extent it arises under federal law, civil conspiracy (Count V). Take them in order.

#### a. Excessive Force

Because he is a prisoner, Spencer's excessive force claim arises under the Eighth Amendment. Force employed by prison officials violates that Amendment if it results in "unnecessary and wanton infliction of pain." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014). These claims have two components: (1) the subjective component, to evaluate "whether force was applied in a good-faith effort to maintain or [to] restore discipline, or [instead] maliciously and sadistically to cause harm"; and (2) an objective component, to assess whether the pain the inmate experienced was sufficiently serious, which is assayed with reference to the force used, even if the level of such force may not be dispositive. *Id.* at 580–81 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)); *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (explaining that a court will not find that an individual used excessive force "simply because it may appear in

6

retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense").

While the Complaint is not all that detailed, Spencer's excessive force claim sufficiently alleges both elements for the purposes of overcoming Adkins' Motion to Dismiss. Start with the subjective component. Spencer alleges that *after* Adkins observed Jordan assault Plaintiff—an assault that included punching Spencer and slamming his head against the floor—Adkins himself physically roughed Spencer up while returning him to his cell—"slamm[ing] Plaintiff into the wall," "twisting Plaintiff's hands and arms despite being fully cuffed," "dragging Plaintiff back to his cell," and "pulling Plaintiff's arms through the small food slot"—which resulted in "wounds from the … hand and ankle restraints." (Doc. 1 ¶¶ 19–24, #5). While the Court does not accept the conclusory allegation that Adkins acted "maliciously and sadistically," (*id.* ¶ 45, #8), it does find that the reasonable inferences drawn from the other well-pleaded allegations support such a finding, at least at the motion to dismiss stage. Simply, Adkins essentially kicked Spencer while he was down—using unnecessary force to handle an already restrained inmate even after the inmate had been aggressively assaulted by another officer. *Cordell*, 759 F.3d at 583 (explaining that malicious intent could be inferred from facts showing that a prison official slammed a handcuffed inmate against the wall in a hallway where the only other people present were two other correctional officers). And no allegations suggest Adkins' actions were necessitated by a legitimate justification, such as the threat to the safety of other officers or inmates. After all, Spencer alleges *Jordan*—another

7

correctional officer—initiated an unprovoked assault. That would seem to undercut a theory premised on Spencer's threatening other officers. The lack of any basis—let alone a reasonable one—for Adkins' use of force against Spencer underscores that one can plausibly infer from the Complaint that Adkins' actions were malicious and sadistic. *Cf. Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010) (explaining that while the test is not whether "force was absolutely necessary," it still requires a showing that "force could *plausibly* have been thought necessary" (emphasis added) (citation omitted)).

Adkins disagrees arguing that nothing implies Adkins acted malevolently because he "observed an unprovoked altercation between Defendant Jordan and Plaintiff and used some amount of force to restore the peace." (Doc. 28, #145). But where is that allegation in the Complaint? Nowhere does the Complaint allege that Spencer needed subduing—the Complaint focuses on *Jordan*'s misconduct in assaulting Spencer, who allegedly was in an injured state when Adkins intervened. Moreover, Adkins' argument that he used only "some force" is not a plausible reading of the Complaint given the Court's obligation to draw all reasonable inferences in favor of Spencer. *Bassett*, 528 F.3d at 430. "Slamm[ing]," "twisting," "dragg[ing]," and "pulling" Spencer's appendages *after* he had already suffered an allegedly brutal assault strikes the Court as both a fair bit of force and a disproportionate response to the circumstances assuming the other allegations are true. (Doc. 1 ¶¶ 21–22, #5). Maybe evidence produced in discovery will vindicate Adkins' side of the story—but construing *the Complaint* in the light most favorable to Spencer, which is the Court's

8

obligation here, the Court finds that it plausibly alleges that Adkins acted maliciously and sadistically. So the subjective component is met.

Next turn to the objective component, whether the force Spencer encountered was sufficiently serious. The focus of this prong of the analysis is "the nature of the force," not "the extent of the injury." *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). As noted above, Adkins' allegedly aggressive manhandling of Spencer while moving him to his cell, despite Spencer being restrained and after having been beaten by another correctional officer, implies the "use of force was an entirely unnecessary and disproportionate response" to Spencer having done nothing but suffer an unprovoked attack—a "violat[ion of] contemporary norms." *Cordell*, 759 F.3d at 585; *id.* at 585–86 (explaining that Sixth Circuit caselaw has held that "striking a neutralized suspect who is secured by handcuffs is objectively unreasonable"). That gets Spencer over the motion to dismiss hurdle as to this component.

Adkins again contests this point in his motion to dismiss—but does not re-raise the argument in his reply. (Doc. 28, #144–45; *see* Doc. 35, #174 (arguing only that Spencer failed to meet the subjective component of the excessive force claim)). The gist of his argument is that nothing in the Complaint ties Adkins' conduct to Spencer's injuries. (Doc. 28, #145). Again, that is not a reasonable reading of the Complaint, especially given the Court must draw all reasonable inferences in Spencer's favor. To offer one example, Adkins is alleged to have twisted Spencer's shackled hands and pulled his arms through a small food slot. (Doc. 1 ¶¶ 21–22, #5). Jordan's assault by contrast is not alleged to have involved physical injury to Adkins' hands or arms. (*Id.*

9

¶¶19–20, #5). Yet Spencer further alleges he was medically evaluated and found to have injuries resulting from the restraints around his hands. (*Id.* ¶ 24, #5). It is both reasonable and plausible for the Court to infer, based on the Complaint, that these injuries were in part attributable to Adkins' actions. And given that the force Adkins used was inappropriate when measured against the factual context the Complaint alleges, Spencer has plausibly alleged the objective component of his Eighth Amendment excessive force claim. So this claim against Adkins in his individual capacity survives the Motion to Dismiss.[7]

      **b.    Failure to Protect**

The story is a little different, though, as to the Eighth Amendment claim predicated on Adkins' alleged failure to protect Spencer from Jordan. To establish Adkins' liability for a failure to intervene, Spencer must allege facts making it plausible that (1) Adkins knew Jordan was planning to use or was using excessive

---

[7] Adkins initially moved to dismiss arguing that he was entitled to qualified immunity because no clearly established constitutional rights were violated. (Doc. 28, #146–48). Adkins did not renew this argument in his reply. But even if he had, it would not be a basis for dismissing Spencer's excessive force claim against Adkins in his individual capacity. For starters, qualified immunity is an affirmative defense that is often fact intensive, which makes it a poor fit for a motion to dismiss. *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 761 (6th Cir. 2020). But more importantly, Adkins cannot marshal the well-pleaded factual allegations to satisfy either prong of the qualified immunity analysis. First, as explained above, Spencer has plausibly alleged a constitutional violation. And the Eighth Amendment right at issue, at least as best as can be understood from the well-pleaded factual allegations at this stage of the litigation, was clearly established. *Cordell*, 759 F.3d at 588 (holding in an analogous context that a prisoner's Eighth Amendment right to be free from excessive force was clearly established because "any reasonable official would know that ramming a handcuffed and controlled prisoner headfirst into a concrete wall is an unreasonable method of regaining control of a prisoner in a hallway occupied only by other jail officials"). Thus, the Court finds that "reading the complaint in the light most favorable to the plaintiff, it is plausible that [the] official's acts violated the plaintiff's clearly established constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 562–63 (6th Cir. 2011). Dismissal of the excessive force claim as barred by qualified immunity is not warranted at this stage.

force, and (2) Adkins "had both the opportunity and the means to prevent the harm from occurring." *Cole v. City of Dearborn*, 448 F. App'x 571, 577 (6th Cir. 2011) (citation omitted). Spencer's allegations satisfy neither prong—there are no allegations in the Complaint that would permit the Court reasonably to infer either that Adkins knew about the use of force beforehand or that he had the opportunity to intervene after the assault began. Based on Spencer's allegations, Jordan's attack occurred "[w]ithout provocation"—in other words, Jordan's actions occurred without any harbinger of the assault to come. (Doc. 1 ¶ 19, #5). *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997) (holding that the awareness prong of the failure to protect claim was not met because there was no evidence the defendant officer had been informed or would have expected the other officer to strike the plaintiff multiple times). And while the Complaint does not give a time frame for Jordan's assault, the Court agrees with Adkins that the allegations suggest that Jordan's actions before Adkins "picked [Spencer] up off the floor"—Jordan's punching Spencer, which "knocked him to the ground," followed by Jordan's "jump[ing] on top of [him] and … slamming [his] head against the floor"—would have occurred over a very short interval. (Doc. 1 ¶¶ 19–21, #5). Spencer does not contest this point. (Doc. 31, #157–58 (arguing only that Adkins knew of the force Jordan was about to use)). Caselaw has consistently held that an officer is not liable for a failure to protect when another's "act of excessive force unfolds in a matter of seconds" because he lacks the opportunity to intervene. *Pennington v. Terry*, 644 F. App'x 533, 548 (6th Cir. 2016) (collecting cases). So Spencer's failure to intervene claim fails to state a claim for relief.

11

Spencer disagrees arguing that he sufficiently pleaded "facts that suggest Defendant Adkins was lying in wait which would suggest that Defendant Adkins was aware that Defendant Jordan was about to use force." (Doc. 31, #158). But that is not so. Spencer alleged only that Adkins was "already waiting" in the hallway where the assault occurred. (Doc. 1 ¶ 18, #5). That is a far cry from the current gloss of that allegation in Spencer's response brief, which magically transforms "already waiting" into "lying in wait." (Doc. 31, #158). It is simply not reasonable to infer from Adkins' mere presence in the hallway that he was engaged in something nefarious—let alone, that Adkins was aware of what Jordan was going to do—especially given Spencer's other allegation that Jordan's assault was unprovoked and without warning. So, considering the Complaint as a whole and interpreting the allegations in Spencer's favor, the Court finds that he has failed to allege facts plausibly establishing the first element of his failure to protect claim—Adkins' awareness of Jordan's coming attack. Thus, the failure to protect claim must be dismissed without prejudice.[8]

### c. Civil Conspiracy

Finally, turn to the civil conspiracy claim. Again, it is unclear what law—state or federal—Spencer relies on for this claim. If it is a state law claim, statutory immunity bars it for the reasons already discussed above. *See* Ohio Rev. Code §§ 9.86, 2743.02(F). But if Spencer instead invokes federal law, he is presumably proceeding

---

[8] Because the Complaint "lacks sufficient facts [regarding Spencer's failure to protect claim] to allege [a] constitutional violation[], no qualified immunity analysis is necessary," even though Adkins appears to have raised that defense as an alternate basis for dismissing this claim against him. *Arsan v. Keller*, No. 3:17-cv-121, 2018 WL 3933706, at *9 (S.D. Ohio Aug. 16, 2018).

12

under § 1983 and alleging that Adkins and Jordan conspired to violate Spencer's Eighth Amendment right to be free from excessive force in prison. Such a claim requires Spencer to show that there was "an agreement between two or more persons to injure another by unlawful action," which requires showing "that (1) a single plan existed, (2) [Adkins] shared in the general conspiratorial objective to deprive [Spencer] of his constitutional (or federal statutory) rights, and (3) an overt act was committed in furtherance of the conspiracy." *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (citation and internal quotation marks omitted). The Complaint lacks factual allegations suggesting a plan—let alone, any shared conspiratorial objective. All that is present is the single, conclusory allegation that "Defendants Jordan [and] Adkins … came together in a malicious combination." (Doc. 1 ¶ 67, #11). This is simply a "naked assertion devoid of further factual enhancement" that fails to state a claim for relief. *Iqbal*, 556 U.S. at 678 (cleaned up).

Spencer objects pointing again to the allegation that Adkins was already present in the hallway where Spencer was escorted and eventually assaulted by Jordan. (Doc. 31, #156). But as noted above in the context of Spencer's failure to protect claim, there is little to glean from this single, anemic allegation. The Court would need to concoct additional facts to justify finding that Adkins' mere presence where the assault occurred evinced his plan *and* his shared objective with Jordan to injure Spencer—to say nothing about how Adkins' presence in the hallway constituted an overt act in furtherance of the alleged conspiracy. *Bazzi*, 658 F.3d at 603 ("The web of inferences is too weak on the alleged facts to permit a finding, absent

13

sheer speculation, that [Adkins] shared [some] larger unlawful objective." (cleaned up)). Drawing such inferences from this benign allegation strains credulity, particularly given Jordan's actions were alleged to be unprovoked—meaning they occurred without warning. And the lack of other well-pleaded factual allegations to substantiate this alleged conspiracy, the formulaic recitation of the elements of the civil conspiracy claim cannot state a claim for relief. *Iqbal*, 556 U.S. at 678. So the Court dismisses the § 1983 civil conspiracy claim against Adkins in his individual capacity (if Spencer raises such a federal claim) without prejudice.[9]

## CONCLUSION

Simply, for one reason or another, all but Spencer's excessive force claim against Adkins in his individual capacity fail. As a result, the Court **GRANTS IN PART AND DENIES IN PART** Adkins' Motion to Dismiss (Doc. 28). More specifically, the Court **DENIES** Adkins' Motion with respect to the excessive force claim levied against him in his individual capacity (Count I), which survives dismissal, but **GRANTS** the Motion in all other respects. Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** all of the official capacity claims and the failure to protect (Count II), negligence (Count IV), and civil conspiracy (Count V) claims brought against Adkins in his individual capacity.[10]

---

[9] As with the failure to protect claim, because Spencer's civil conspiracy claim fails to state a claim for relief, the Court declines to assess whether qualified immunity—assuming Adkins raised such an argument—would also require a dismissal of Spencer's civil conspiracy claim against Adkins. *See supra* note 8.

[10] Only Spencer's claims against Adkins are resolved in this Opinion and Order—all other claims remain as they were before the publication of this disposition.

**SO ORDERED.**

December 6, 2023
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

15