## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**JERMAINE SPENCER,**

       **Plaintiff,**

         **v.**

**WES JORDAN, et al.,**

       **Defendants.**

**Case No. 1:22-cv-557**

**JUDGE DOUGLAS R. COLE**

### OPINION AND ORDER

Correctional Officers-Defendants Wes Jordan and Thomas Adkins move for summary judgment, arguing that Inmate-Plaintiff Jermaine Spencer failed to exhaust his administrative remedies before filing this lawsuit, in violation of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e. For the reasons discussed below, the Court **GRANTS** Defendants' First Motion for Summary Judgment (Doc. 43). But in doing so, it **DISMISSES** the action **WITHOUT PREJUDICE**.

### BACKGROUND

The factual background to this case, which the Court has previously outlined,[1] is largely irrelevant to this Opinion and Order. In short, Spencer alleges that in October 2020, while incarcerated at the Southern Ohio Correctional Facility (SOCF), Correctional Officers Jordan and Adkins (along with another unnamed Officer) physically assaulted him without provocation. (Compl., Doc. 1, #4–5).

---

[1] The Court thoroughly outlined the facts giving rise to this suit in its previous Opinion and Order. (Doc. 37, #180–81).

What *is* of particular relevance here, however, is what Spencer did after the assault. In line with SOCF's inmate grievance procedure, Spencer filed an informal complaint resolution on October 4, 2020, detailing the physical assault he allegedly endured. (Parker Aff., Doc. 42-1, #218; Spencer Aff., Doc. 50-2, #263). Then, on November 1, 2020, Spencer filed a notification of grievance to SOCF's Inspector of Institutional Services. (Doc. 42-1, #219; Doc. 50-2, #263). Everyone agrees that Spencer made those two filings, but nothing more—in other words, all agree that he did not file an appeal with the Office of the Chief Inspector. (Def.'s Proposed Undisputed Facts, Doc. 43-1, #239; Doc. 50-2, #264). But the parties disagree as to *why* he failed to file that appeal. Spencer reports that he never received a disposition of grievance from the Institutional Inspector, or else he would have appealed that disposition. (Doc. 50-2, #264). Defendants, for their part, maintain that the Institutional Inspector provided Spencer a disposition of grievance on November 10, 2020, and that Spencer simply failed to appeal it. (Doc. 43-1, #239 (citing Doc. 42-1, #220)).

In any event, no one disputes that Spencer eventually filed this lawsuit on September 26, 2022. (Doc. 1). He brought claims under 42 U.S.C. § 1983 and state law against various Defendants. (*Id*. at #8–11). But the Court has since dismissed two Defendants—SOCF Warden Ronald Erdos and Ohio Department of Rehabilitation and Correction (ODRC) Director Annette Chambers-Smith—from the

case. (Op. & Order, Doc. 26).[2] And the Court has further dismissed all claims against Defendant Adkins, except the excessive force claim Spencer levies against him in his individual capacity. (Op. & Order, Doc. 37).[3]

Defendants Jordan and Adkins now move for summary judgment on the remaining claims. (Doc. 43). They argue that they are entitled to summary judgment because Spencer did not exhaust his administrative remedies as the PLRA requires. (*Id.* at #236). Specifically, they say he failed to complete the third step of the grievance process under Ohio's inmate grievance procedure when he did not appeal the disposition of his grievance to the Office of the Chief Inspector. (*Id.*).

Spencer disagrees. He says a genuine dispute of material fact exists as to whether the relevant administrative remedies were even available to him such that he could satisfy his exhaustion requirement. (Resp., Doc. 49, #255). In particular, he argues that no one served him a copy of the disposition of his grievance. (*Id.*). And without "notice" of the disposition, Spencer claims he lacked the ability to pursue an appeal under the third step of Ohio's grievance process. (*Id.* at #257).

Defendants replied. (Doc. 53). So the motion is now ripe.

---

[2] Spencer raised his § 1983 failure-to-train-and-to-supervise-staff claim (Count III) against former Defendants Erdos and Chambers-Smith alone. (Doc. 1, #9–10). So in dismissing those two Defendants, the Court, in turn, dismissed Count III from the case. (Doc. 37, #180 n.1).

[3] The Opinion and Order dismissing all claims but the excessive force claim against Adkins in no way impacted any other claims against any other Defendant. (Doc. 37, #193 n.10 ("Only Spencer's claims against Adkins are resolved in this Opinion and Order—all other claims remain as they were before the publication of this disposition.")).

## LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When the non-movant bears the burden of proof at trial, as with respect to Defendants' motion for summary judgment, the movant (here, Defendants) can establish that there are no genuine disputes of material fact and that they are entitled to judgment as a matter of law by showing that the non-moving party (here, Spencer) lacks evidence to support an essential element of his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Peeples v. City of Detroit*, 891 F.3d 622, 630 (6th Cir. 2018).

Further, as the Sixth Circuit has explained, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 697 (6th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

In sum, if the moving party has made the necessary showing, the non-moving party must present some "sufficient disagreement" that would warrant submitting the dispute to a jury. *See Rocheleau v. Elder Living Const., LLC*, 814 F.3d 398, 400 (6th Cir. 2016) (quoting *Anderson*, 477 U.S. at 251–52). In making that determination, though, the Court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Jones v. Producers Serv. Corp.*, 95 F.4th 445, 449 (6th Cir. 2024).

4

## ANALYSIS

Defendants' motion presents two narrow issues: whether Spencer's administrative remedies under Ohio's inmate grievance procedure were "available" to him, and if so, whether he exhausted those remedies such that he could legitimately file this lawsuit. The Court concludes that Spencer's failure to make an affirmative effort to comply with step three of the applicable grievance procedure resolves both questions in Defendants' favor. The Court begins by outlining the PLRA's requirements and Ohio's inmate grievance procedure. Then, the Court turns to how Spencer failed to satisfy those requirements.

### A.    The PLRA and Ohio's Inmate Grievance Procedure.

Under the PLRA, an inmate must exhaust all state administrative remedies before filing a federal lawsuit. 42 U.S.C. § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 638–39 (2016) ("[Section 1997e(a)'s] language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." (cleaned up)); *Richards v. Perttu*, 96 F.4th 911, 916 (6th Cir. 2024) ("Under the PLRA, a prisoner may not sue to vindicate his constitutional rights under 42 U.S.C. § 1983 unless he has first exhausted the administrative remedies available to him."). And that exhaustion requirement "is a strong one." *Richards*, 96, F.4th at 916 (citing *Napier v. Laurel Cnty.*, 636 F.3d 218, 222 (6th Cir. 2011)). "It requires 'proper exhaustion,' which 'means using all steps that the agency holds out, and doing so *properly*.'" *Id.* (emphasis in original) (citing

*Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). Simply put, an inmate cannot bring an unexhausted claim in court. *Jones v. Bock*, 549 U.S. 199, 211 (2007).

But in assessing exhaustion, a few things bear noting. First, the exhaustion requirement acts as an affirmative defense, not a jurisdictional hurdle. *Lamb v. Kendrick*, 52 F.4th 286, 292 (6th Cir. 2022); *see also Jones*, 549 U.S. at 216. So the defendant, not the inmate-plaintiff, bears the burden to "prove [the prisoner's failure to exhaust] by a preponderance of the evidence." *Lamb*, 52 F.4th at 292. The Court, therefore, "should grant summary judgment only if [Defendants] establish[] that there is no genuine dispute of material fact that [Spencer] failed to exhaust." *Id.*

Next, although the PLRA generally mandates exhaustion, an exception exists: inmates need not exhaust *unavailable* remedies. *Id.* An administrative remedy is "unavailable" when (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it "is 'so opaque' or 'so confusing'" that "no ordinary prisoner can discern or navigate it"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 292–93 (citing *Ross*, 578 U.S. at 643–44)). In those instances, the administrative procedure is "not subject to the exhaustion requirement." *Id.* at 292. Importantly though, merely showing that an administrative procedure was unavailable under one of those three definitions does not "automatically absolve[] [an inmate] from the PLRA's exhaustion requirement." *Id.* at 293. Rather, the inmate must make "affirmative efforts to comply with the administrative procedures" as a precursor to successfully asserting an unavailability

6

argument in a later federal action. *Id.* (citing *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015)).

Finally, the inmate's correctional institution, not the PLRA, defines the administrative procedures that the inmate must exhaust. *Lamb*, 52 F.4th at 292 (citing *Jones*, 549 U.S. at 218). Here, Ohio Administrative Code §§ 5120-9-31(J)(1)–(3) outlines the inmate grievance procedure applicable to Spencer's claims. (Doc. 43, #235–36; Doc. 49, #253–55). That grievance procedure involves three steps. First, within fourteen days of the event giving rise to the complaint, the inmate must file an informal complaint with the direct supervisor of the staff member about whom the inmate is complaining. Ohio Admin. Code § 5120-9-31(J)(1). Second, if the inmate is dissatisfied with the response to his informal complaint, he may file a formal grievance with the inspector of institutional services. *Id.* § 5120-9-31(J)(2). The inspector of institutional services is required to provide a written response to the inmate's grievance within fourteen calendar days of receiving the grievance. *Id.* But if a disposition has not been rendered within twenty-eight days from receipt of the grievance, the complaint is treated as unresolved, and the inmate may proceed to step three of the process. *Id.* At step three, if the inmate is dissatisfied with the disposition of grievance (or if no disposition has been rendered within twenty-eight days), he has fourteen days to file an appeal with the office of the chief inspector (although the chief inspector can waive that time requirement for "good cause"). *Id.* § 5120-9-31(J)(3). If the inmate remains unhappy with the final disposition after properly completing step three, he may then sue in federal court. *See Williams v. Williams*, No. 1:19-cv-489,

2021 WL 4397861, at *1 (S.D. Ohio Sept. 27, 2021) (explaining that "[b]efore suing in federal court," an inmate must first "exhaust[] all of his administrative appellate rights").

**B.** **The Court Grants Defendants' Motion Because Spencer Failed to Make an Affirmative Effort at Step Three of Ohio's Inmate Grievance Procedure.**

No one disputes that Spencer failed to fully exhaust his administrative remedies under Ohio's three-step inmate grievance procedure. True, he satisfied step one by filing an informal complaint. (Doc. 42-1, #218). And he fulfilled step two by filing a notification of grievance. (*Id.* at #219). But all agree Spencer never proceeded to step three by filing an appeal of the grievance disposition. (Doc. 42-2, #226–27; Doc. 50-2, #264 ("Had I received the disposition … *I would have* exercised my right to appeal[.]") (emphasis added)). In other words, he did not complete "all steps" of the required grievance procedure, and in neglecting to do so, did not exhaust his administrative remedies. *See Woodford*, 548 U.S. at 90.

The Court's analysis, however, does not end there. Spencer blames his failure to proceed to step three on SOCF. (Doc. 49, #255). Specifically, he says that SOCF "failed to serve him with a disposition of his grievance," which rendered his administrative remedies unavailable. (*Id.*). But, as noted above, his assertion of unavailability, standing alone, does not suffice to "automatically absolve[]" Spencer of complying with Ohio's inmate grievance procedure. *Lamb*, 52 F.4th at 293. Rather, before the Court can consider whether SOCF in fact made the specified administrative remedy unavailable, Spencer must put forth evidence that, at the very

least, creates a genuine dispute that he "ma[de] affirmative efforts to comply" with step three. *Id.* (citation omitted).

Spencer did not make that showing. To the contrary, he admits in his affidavit that he made no effort to appeal. (Doc. 50-2, #264). ODRC Assistant Chief Inspector Korrine Morrow's affidavit confirms as much. (Doc. 42-2, #226 ("The Chief Inspector's Office has no record of Mr. Spencer submitting an appeal[.]")). Nor did Spencer take any other affirmative step, such as inquiring about the status of his grievance. *See Napier*, 636 F.3d at 223–24 (collecting cases where the inmate "did *something*" to attempt to satisfy the exhaustion requirement like "contact[ing] prison personnel" (emphasis in original)). As there is no genuine dispute that Spencer failed to make an affirmative effort to comply with step three, Defendants are entitled to summary judgment on the exhaustion issue.

What is more, even assuming Spencer had made that initial showing, summary judgment would still be proper because he failed to establish a genuine issue of fact as to whether the appeal process was unavailable to him. His unavailability argument rests solely on the appeal procedure allegedly "operat[ing] as a simple dead end." (Doc. 49, #255). More specifically, Spencer argues that SOCF's providing him a copy of the grievance disposition was "necessary for his appeal," and that SOCF failed to do so. (*Id.*). But the grievance procedure's plain text belies that argument. Step two expressly states that when "a disposition has not been rendered after a total of twenty-eight days from the receipt of the [notification of] grievance, *the complaint will be deemed unresolved and the inmate may proceed to step three of*

9

*the process.*" Ohio Admin. Code § 5120-9-31(J)(2) (emphasis added).[4] So even if Spencer did not receive a copy of the grievance disposition as he claims, (Doc. 50-2, #264), that in no way prevented him from proceeding to step three and filing an appeal.[5] SOCF's alleged failure to provide him a copy of the disposition therefore did not "operate as a simple dead end" or otherwise render his administrative remedies unavailable.

In fairness to Spencer, step two does say the "inspector of institutional services shall provide a written response to the [notification of] grievance within fourteen calendar days of receipt." Ohio Admin. Code § 5120-9-31(J)(2). And the Court in no way condones SOCF's alleged failure (which, to be clear, is still merely an allegation) to provide Spencer a copy of the disposition. An institution should of course be made to "compl[y] with its own rules." *Risher v. Lappin*, 639 F.3d 236, 241 (6th Cir. 2011). But Spencer, too, must comply with the administrative procedure. And under the relevant version of § 5120-9-31(J)(2), Spencer should have proceeded to step three

---

[4] Spencer's informal complaint indicated that Jordan and Adkins attacked him on October 2, 2020. (Doc. 42-1, #218). He filed that informal complaint on October 4, 2020. (*Id.*). Spencer then filed his notification of grievance on November 1, 2020. (*Id.* at #219). The disposition of grievance (which Spencer says he never received) issued on November 10, 2020. (*Id.* at #220). In other words, the relevant dates span from October 2, 2020, to November 10, 2020. That means the version of the Ohio inmate grievance procedure governing Spencer's claims here was the one in effect from January 9, 2020, to March 20, 2021. Because that previous version of grievance procedure mirrors the current version in all relevant respects, the Court cites the current version of Ohio's Administrative Code.

[5] Defendants argue that the Inspector of Institutional Services did render a disposition of grievance. (Doc. 53, #271 (citing Doc. 42-1, #220)). And they further suggest that Ohio's grievance procedure does not require institutions to deliver a copy of the disposition to the inmate to satisfy their obligation to respond. (*Id.*). The Court need not reach these issues, however. Under § 5120-9-31(J)(2), even if no disposition were rendered, Spencer could have still appealed after twenty-eight days.

and appealed his grievance even if, as he says, SOCF did not provide him a copy of the disposition. But he did not do so.

Not so fast, says Spencer. According to him, *Troche v. Crabtree*, 814 F.3d 795 (6th Cir. 2016), controls and requires the Court to rule in his favor on exhaustion. There, the Sixth Circuit found that the then-applicable Ohio grievance procedure "impart[ed] no authorization to proceed to step three … to inmates who never receive[d] a response" at step two. *Id.* at 800. And since the inmate-plaintiff in that case had not received a response to his notification of grievance at step two, the court held that he was not required to file a step three appeal to comply with the PLRA's exhaustion requirement. *Id.* at 801–02.

From that holding, Spencer offers the following syllogism to explain why he too is exempt from the grievance procedure's third step: an institution's failure to provide a disposition of grievance at step two pardons the plaintiff from proceeding to step three; Spencer did not receive a disposition of grievance at step two; therefore, Spencer was pardoned from proceeding to step three.

But *Troche*'s reasoning rests on a now-obsolete version of Ohio's inmate grievance procedure. And under the version applicable to the instant incident, Spencer's syllogism falls apart. To see why, compare the two versions. The old version, which *Troche* analyzed, included language that authorized an inmate who had not received a response at step one to proceed to step two. *Troche*, 814 F.3d at 800. The old version did not, however, contain that same authorizing language at step two, suggesting that, under that version, an inmate who did not receive a response at

11

step two could not proceed to step three. *Id.* The new version, however, expressly includes authorizing language at step two. As already noted, it states that if an institution renders no disposition within twenty-eight days of the inmate filing a notification of grievance, "the complaint will be deemed unresolved and the inmate may proceed to step three of the process." Ohio Admin. Code § 5120-9-31(J)(2).[6]

In light of that change in regulatory language, *Troche*'s reasoning arguably hurts Spencer's case more than it helps him. *Troche* reasoned that "*[i]n the absence of any statutory instruction*, [the inmate] proceeded logically" by sending a letter to prison staff inquiring about the status of his grievance. *Troche*, 814 F.3d at 801 (emphasis added). And the Sixth Circuit refused to conclude that the inmate did not exhaust his remedies merely by "fail[ing] to do something not specified, outlined, or required by his prison's grievance procedure." *Id.* Here, by contrast, the grievance procedure *does* contain an explicit regulatory instruction, which specifies that

---

[6] In *Lamb*, the Sixth Circuit concluded that "no meaningful difference" existed between the four different versions of Ohio's inmate grievance procedure in effect between April 2018 (when the inmate's grievance there arose) and October 2022 (when the Sixth Circuit rendered its opinion in *Lamb*). 52 F.4th at 293. Because the court focused primarily on whether the inmate made sufficient efforts to comply with steps one and two of the grievance procedure, *see id.* at 295–98, it may not have considered as "meaningful" the language (which took effect on April 5, 2019) authorizing an inmate to proceed to step three despite not receiving a response at step two. And when the *Lamb* court later favorably cited *Troche*'s finding that "inmates are foreclosed from proceeding to step three until they receive a response to their step two grievance," the *Lamb* court did so in dicta. *Id.* at 298 (citing *Troche*, 814 F.3d at 800– 01) ("Given our conclusion above, it is irrelevant whether Lamb made affirmative efforts to file an appeal with the chief inspector[.]"). In any event, this Court finds that there *is* a meaningful difference, for the purposes of this Opinion and Order, between the version of Ohio's grievance procedure in effect up through April 4, 2019, on the one hand, and the remaining three versions that have been in effect since that time, on the other. (To be clear, the latter three do not meaningfully differ on whether an inmate may proceed from step two to step three without first receiving a response—each one authorizes it).

Spencer could have proceeded to step three even if he did not receive a notice of a disposition at step two. His reliance on *Troche* is therefore misplaced.[7]

True, Spencer has been incarcerated "at a number of [Ohio's] correctional facilities" since 1997. (Doc. 50-2, #263). So given that the grievance procedure has evolved throughout his incarceration—as explained above—it may simply be the case that Spencer was unaware of the new procedure, and in particular, that he no longer needed to await the disposition of grievance at step two before proceeding to file an appeal at step three. But Spencer did not raise that argument. And even if he had, it would have been to no avail: "A plaintiff's failure to exhaust cannot be excused by his ignorance of the law or the grievance policy." *Napier*, 636 F.3d at 221 n.2 (collecting cases); *see also Brock-Butler v. Parker*, No. 16-6210, 2017 WL 7116972, at *3 (6th Cir.

---

[7] The two other cases Spencer cites (to a much lesser extent) are likewise distinguishable. In *Risher v. Lappin*, the court found that the inmate "affirmatively endeavored to comply" with the relevant four-tier grievance procedure "by treating the [institution's] failure to respond" as a denial "and appealing that denial," as the procedure said he could. 639 F.3d 236, 240 (6th Cir. 2011). Unlike the inmate in *Risher*, Spencer did not make an affirmative effort to proceed through each step of Ohio's grievance procedure, despite it permitting him to do so. Moreover, the procedure at issue in *Risher* required inmates to attach responses from previous steps in the grievance process to appeal forms. *Id.* at 239. Since the prison failed to provide the requisite response to the inmate, which would have allowed him to appeal, his attempt to appeal without the document was "sufficient" to exhaust his remedies. *Id.* at 240. Ohio's grievance procedure, however, does not require inmates to attach responses from prior levels to their appeal forms; Spencer could have appealed without the grievance disposition. *Risher*, therefore, offers Spencer no help. Nor does *Surles v. Andison*, 678 F.3d 452 (6th Cir. 2012), the other case on which Spencer relies. There, the inmate accused the prison officials of confiscating and destroying his papers, depriving him of court documents, transferring him to other prisons, and refusing to process his grievances. *Id.* at 455. The court found summary judgment improper because "a dispute of material fact exist[ed] as to whether [the prison officials] prevented [the inmate] from filing grievances and exhausting his administrative remedies." *Id.* at 457. Spencer alleges nothing like that here. He simply argues that a genuine dispute exists about whether SOCF's failure to provide him a copy of his grievance disposition prevented him from exhausting his administrative remedies. (Doc. 49, #257–58). But, as already explained, the grievance procedure's text forecloses that argument—nothing prevented him from appealing in the absence of a disposition.

13

Sept. 21, 2017) ("The district court properly granted summary judgment to the defendants" in part because a prisoner's "failure to exhaust cannot be excused by his ignorance of the law or the grievance policy." (cleaned up)).

Taking all of that together, Defendants have met their burden of showing an absence of any genuine dispute about (1) whether Spencer exhausted his administrative remedies (he did not) and (2) whether Spencer made an affirmative effort to comply with step three such that he could raise an unavailability argument (again, he did not). *See Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012) (explaining that district courts must "apply the [*Jones v.*] *Bock* standard" in determining whether summary judgment is proper). Said another way, Defendants have put forth sufficient evidence to show that Spencer did not make an affirmative effort to comply with step three of the grievance procedure, which makes his unavailability argument a nonstarter. *See Lee*, 789 F.3d at 677.

One final question remains—whether Spencer's failure to exhaust means that the Court should dismiss Spencer's action with prejudice, or without. Unfortunately, no party addressed that issue in its briefing. Fortunately, though, the Sixth Circuit has: "[T]he appropriate disposition of an unexhausted claim under the PLRA is dismissal without prejudice[.]" *Bell v. Washington*, No. 22-2132, 2023 WL 6438597, at *4 (6th Cir. Sept. 29, 2023) (quoting *Bell v. Konteh*, 450 F.3d 651, 653 n.4 (6th Cir. 2006)) (reversing the district court's dismissal with prejudice of the inmate's unexhausted claims).

Here, as explained, Spencer has not exhausted his claims. So, the Court will **DISMISS** this action **WITHOUT PREJUDICE**.[8]

## CONCLUSION

For the reasons explained above, the Court **GRANTS** Defendants' First Motion for Summary Judgment (Doc. 43), and **DISMISSES** the action **WITHOUT PREJUDICE**. The Court **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this case on its docket.

**SO ORDERED.**

January 13, 2025
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

---

[8] In doing so, though, the Court notes that the Supreme Court has held that the PLRA mandates "proper exhaustion," meaning the inmate must comply with any reasonable deadlines the administrative grievance procedure imposes. *See Woodford*, 548 U.S. at 90–91. Here, as described above, the applicable Ohio Administrative Code provision required Spencer to invoke step three within a specified period of time, and he failed to do so. *See* Ohio Admin. Code § 5120-9-31(J)(3). So it is possible that, at this juncture, Burks can no longer properly exhaust his administrative remedies, thus foreclosing a federal court action. At the same time, though, the administrative provision allows the chief inspector to waive that time limit for "good cause." *Id*. So, it is possible that, even now, Burks can move forward with the third step of the process and properly exhaust his administrative remedies.